UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **SCOTT BRADLEY BARMORE, ET AL.** | **CIV. ACTION NO. 3:24-00056** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **SIG SAUER, INC., ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, are three motions: a motion to remand [doc. # 13] and for leave to file second amended and supplemental complaint [doc. # 30] filed by Plaintiffs Scott Barmore and Janice Barmore, plus a motion to dismiss for lack of subject matter jurisdiction, insufficient service of process, and/or for failure to state a claim upon which relief can be granted [doc. # 20] filed by Defendant, Farmerville Police Department. For reasons assigned below, the motion for leave to amend is GRANTED, and IT IS RECOMMENDED that the motion to dismiss be DENIED and that the motion to remand be GRANTED.

## Background

On December 5, 2022, Farmerville Police Department ("FPD") Officer Scott Barmore ("Scott") sustained a gunshot wound to his right leg when his FPD-issued weapon, a P320 pistol manufactured by Sig Sauer, Incorporated ("SIG"), inadvertently discharged while he was holstering it. (Petition for Damages, ¶¶ 3-6). At the time of the accidental shooting, Scott was participating in his annual firearms requalification training required by the Police Officer Standards Trainings ("POST") board for employment with any law enforcement agency in the State of Louisiana. *Id.*, ¶ 4. No ambulances were available to transport Scott to the hospital

after the incident, so a sheriff's deputy drove Scott to the hospital in his police unit.  *Id.*, ¶ 7.

On December 5, 2023, Scott and his wife, Janice Barmore ("Janice") (collectively, the "Barmores") filed the instant petition for damages in the Third Judicial District Court for the Parish of Union, State of Louisiana, asserting products liability and negligence claims against SIG, together with a negligence claim against the FPD.  (Petition).  The Barmores seek recovery for damages sustained by Scott from the gunshot injury, loss of consortium damages suffered by Janice, plus attorney's fees.  *Id.*, ¶¶ 14, 16, Prayer.

On January 16, 2024, SIG removed the case to federal court on the sole basis of diversity jurisdiction, 28 U.S.C. § 1332.  (Notice of Removal).  SIG alleged that the Barmores are citizens of Louisiana, whereas SIG is a Delaware corporation, with its principal place of business in New Hampshire.  *Id.*, ¶¶ 6-9.  Although SIG acknowledged that the FPD is a Louisiana citizen thats presence would destroy diversity of citizenship between the parties, it asserted that the Barmores have no reasonable possibility of recovery against the FPD because (1) the Barmores did not set forth sufficient facts to state a plausible claim for relief against the FPD, and (2), in any event, as Scott's employer, the FPD is immune from suit in tort pursuant to the exclusivity remedy provision of the Louisiana Worker's Compensation Law ("LWCL"), Louisiana Revised Statutes §§ 23:1032(A)(1)(a) and 23:1034 (public employees).  *Id.*, ¶¶ 11-15.[1]  Once the improperly joined party is excised from the jurisdictional equation, SIG maintains that there is complete diversity of citizenship between it and the Barmores.  *Id.*

---

[1] "[C]ompensation benefits are the exclusive remedy of both the injured worker and his [or her] spouse . . ." *Minvielle v. Kaiser Aluminum & Chem. Corp.*, 766 F.2d 189, 190 (5th Cir. 1985). Thus, "the tort claims for loss of consortium of [the injured worker's] spouse and children are barred by the exclusive remedy provisions of the [LWCL]."

2

On February 15, 2024, the Barmores filed a First Amended Complaint ("FAC") to buttress their allegations of negligence against the FPD. (FAC [doc. # 12]). Citing their freshly minted allegations, the Barmores contemporaneously filed the instant motion to remand the case to state court because the FPD's presence destroyed complete diversity jurisdiction.

On March 7, 2024, SIG filed a motion to strike the FAC, in part, because, given the timing of the motion, the Barmores required, but failed to obtain consent of the parties or leave of court to file the amended pleading. (M/Strike [doc. # 18]).

SIG also filed its opposition to the motion to remand on March 7, 2024. (SIG Opp. Memo. [doc. # 17]). SIG maintained that the FPD's citizenship should be disregarded because the accident arose in the course and scope of Scott's duties, and, therefore, as Scott's employer, the FPD is immune from suit in tort pursuant to the LWCL's exclusivity provision. *Id*. SIG also referenced (and attached) an incident report completed by the Union Parish Sheriff's Office, which included the following concluding note:

> [a]t the time this incident occurred, Ofc. Scott Barmore was engaged in Firearms Requalification Training, while using a firearm that was issued to him by the Farmerville Police Department. This training is required annually by the Peace Officer Standards Training (POST) board for a person to be able to work for any Law Enforcement Agency in the State of Louisiana, including the Farmerville Police Department. **Due to this, this incident should be considered a Line Of Duty Injury.**

(Union Parish Sheriff's Office Offense/Incident Report; Opp. Memo., Exh. 1) (emphasis added).

On March 8, 2024, the FPD adopted and joined in SIG's opposition to the motion to remand. (FPD Opp. Memo. [doc. # 21]). The FPD also contemporaneously filed the instant motion to dismiss the Barmores' claims against it for lack of subject matter jurisdiction,

3

insufficient service of process, and/or for failure to state a claim upon which relief can be granted, FED. R. CIV. P. 12(b)(1), (5), & (6). (M/Dismiss [doc. # 20]). Specifically, the FPD argued that it was entitled to sovereign immunity under the Eleventh Amendment, that the Barmores failed to perfect service under Rule 4(j)(2), and that it lacked the capacity to be sued. The FPD further asserted that the court should not permit the Barmores to amend their complaint to substitute the Town of Farmerville for the incorrectly sued FPD because the Barmores' tort claims were barred by the exclusive remedy provision of the LWCL.

On March 14, 2024, the Barmores filed a reply brief in support of their motion to remand. (Pls. Reply [doc. # 23]). They argued that Scott was not acting within the course and scope of his employment at the time of the accident, and, therefore, his claims against the FPD were not barred by the LWCL. *Id*. In support of their argument, the Barmores attached a copy of a letter from the Louisiana Workforce Compensation Corporation finding that Scott's alleged injury on December 5, 2022, was "not compensable according to the [LWCL]," and, therefore, his claim for benefits was denied. (March 13, 2024 letter from E. Wilson to S. Barmore; Reply Brief, Exh. [doc. # 23-1]).

On April 17, 2024, the Barmores filed the instant motion for leave of court to file a second amended and supplemental complaint ("SASC") to substitute the Town of Farmerville ("Farmerville") for the incorrectly sued FPD and to set forth additional facts to support their claims. (M/Leave [doc. # 30]).

The Barmores also filed a memorandum in opposition to the FPD's motion to dismiss on April 17, 2024. (Pls. Opp. Memo. [doc. # 31]). They agreed that Farmerville was the proper defendant in lieu of the FPD, which was why they had sought leave to file their SASC. *Id*. In

4

addition, the Barmores disputed the FPD's arguments for dismissal under Rules 12(b)(1) and (6). *Id*.

On April 23, 2024, the Court granted SIG's motion to strike the FAC because the pleading required consent or leave of court, which they had not obtained. (Mem. Order [doc. # 33]).

Ultimately, SIG and the FPD did not file a response to the Barmores' motion for leave to file their SASC, and the time to do so has passed. *See* Notice of Motion Setting [doc. # 32]. Therefore, the motion is unopposed, and the matter ripe. *Id*.

## Law and Analysis

### I. Subject Matter Jurisdiction at the Time of Removal

The diversity jurisdiction statute presupposes a civil action between "citizens of different states," where all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332; *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th Cir. 1990). The court reiterates that, to overcome the patent obstacle to diversity jurisdiction posed by the FPD's presence in the suit, SIG contends that the Barmores have no reasonable possibility of recovery against the FPD, and, consequently, the Barmores improperly joined the FPD in a transparent attempt to defeat diversity jurisdiction.

It has been long established that an improperly joined or nominal defendant will not defeat subject matter or removal jurisdiction. *See Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 871 (5th Cir. 1991); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005)). There are two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of

action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*) (citing *Travis v. Irby*, 326 F.3d 644, 646-647 (5th Cir. 2003)). In this case, there are no allegations of actual fraud.  Accordingly, the court must determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against [the non-diverse] defendant, which, stated differently, means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [that] defendant." *Id*.

One way to determine if a plaintiff has a possibility of recovery against the FPD is to assess whether the allegations in the complaint state a claim for relief against the non-diverse defendant under state law, i.e., a FED. R. CIV. P. 12(b)(6) analysis.[2]  *Smallwood*, 385 F.3d at 573. Here, of course, SIG argued not only that the original petition failed to set forth facts to support a negligence claim against the FPD, but also that the Barmores' tort claims against the FPD are barred by the LWCL's exclusivity remedy provision.

However, the court need not address the foregoing arguments, at least in the context of the Barmores' claims against the FPD, because, as a threshold matter, the FPD lacks the capacity to be sued and, thus, is not a proper defendant.  Under Federal Rule of Civil Procedure 17(b), "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  FED. R. CIV. P. 17(b).  Consequently, the law of Louisiana controls here.  *See, e.g., Union Pac. R.R. Co. v. Taylor Truck Line, Inc.*, Civ. Action No. 15-0074, 2016 WL 7480504, at *3 (W.D. La. Oct. 31, 2016), *R&R adopted*, 2016 WL 7473776 (W.D. La. Dec. 28, 2016).  To

---

[2]  To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations [in the plaintiff's petition] must be enough to raise a right to relief above the speculative level," which means that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

have the capacity to be sued under Louisiana law, an entity must qualify as a "juridical person." *Id.* (citing *Dejoie v. Medley*, 945 So.2d 968, 972 (La. App. 2d Cir. 2006)). A "juridical person" is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE ART. 24. "[I]n the absence of law providing that an entity may sue or be sued, the entity lacks such capacity." *Brown v. City of Alexandria*, Civ. Action No. 17-0798, 2018 WL 2425097, at *2 (W.D. La. May 29, 2018) (citations omitted).

In support of its motion to dismiss, the FPD submitted a copy of the charter for the Town of Farmerville and noted that it does not authorize the creation of a standalone police department distinct from the Town of Farmerville itself. *See* Charter, FPD M/Dismiss, Exh. 1 [doc. # 20-1]. Furthermore, federal courts in this state, including this one, regularly hold that city police departments are not juridical entities capable being sued. *See Richardson v. U. S. Fed. Bureau of Investigations*, Civ. Action No. 20-1050, 2021 WL 1207752, at *14 (W.D. La. Mar. 15, 2021), *R&R adopted,* 2021 WL 1258400 (W.D. La. Apr. 1, 2021); *Martin v. Davis*, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) ("Under Louisiana law, police departments are not juridical entities capable of suing or being sued"); *Walker v. Jackson Par. Dist. Attorney's Office*, No. 12-02978, 2013 WL 2424380, at *3 (W.D. La. June 3, 2013) (West Monroe Police Department); *Hicks v. Page*, No. 10-0084, 2010 WL 2243584, at *2 (W.D. La. Feb. 26, 2010), *R&R adopted*, 2010 WL 2246393 (W.D. La. May 28, 2010) (Shreveport Police Department).

In sum, the Barmores have no reasonable possibility of recovery against the FPD, and, therefore, its presence must be disregarded for purposes of diversity jurisdiction. The remaining parties are completely diverse, with no forum-domiciled defendant. Thus, the court may exercise subject matter and removal jurisdiction. 28 U.S.C. §§ 1332 and 1441.

Having determined that the Barmores improperly joined the FPD, the court necessarily

lacks jurisdiction to entertain the suit against the FPD, thereby requiring its dismissal, without prejudice. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016) ("*IEVM*") ("the dismissal of a nondiverse party over whom the court does not have jurisdiction must be a dismissal without prejudice in every instance."). If granted, the Barmores' motion for leave to file their SASC effectively will achieve the voluntary dismissal of their claims against the FDP. Regardless, the FPD's motion to dismiss should be denied as moot.[3]

Because the Barmores' motion to remand was premised upon lack of complete diversity occasioned by their claims against the FPD, the court's finding that the FPD was improperly joined normally would doom their motion to remand, as well. However, the Barmores also seek to amend their complaint to substitute Farmerville for the incorrectly sued FPD, which, if permitted, will destroy subject matter jurisdiction and require remand, 28 U.S.C. § 1447(e). *See* discussion, *infra*. Accordingly, the court will utilize and extend the scope of the extant motion to remand to encompass the joinder/substitution of the non-diverse defendant.

## II.     Leave to Amend

Rule 15 provides that leave to amend shall be "freely [granted] when justice so requires." FED. R. CIV. P. 15(a)(2). This rule is circumscribed, however, by 28 U.S.C. § 1447(e) which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder

---

[3] In *IEVM*, the Fifth Circuit vacated the district court's ruling granting a Rule 12(b)(6) motion in favor of the non-diverse defendant because the court did not have jurisdiction to do so. *IEVM*, 818 F.3d at 210. The court explained that when the district court determined that the non-diverse defendant was improperly joined, the court effectively dismissed plaintiff's claims against the defendant without prejudice. *Id*. At that point, the district court should have denied the Rule 12(b)(6) motion, as moot. *Id*. The same result obtains here.

would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e); *Ascension Enters. v. Allied Signal*, 969 F. Supp. 359, 360 (M.D. La. 1997) (Section "1447(e) trumps Rule 15(a)."). Here, the Barmores seek to join or substitute Farmerville for the incorrectly sued FPD. *See* SASC [doc. # 30-1]. The proposed pleading alleges that, "[f]or the purposes of diversity jurisdiction, [Farmerville] is a citizen of the State of Louisiana." *Id*., ¶ 5. The SASC further cautions that jurisdiction is not proper under § 1332 because the Barmores are citizens of the same state as Farmerville. *Id*., ¶ 6.

Where, as here, plaintiffs seek to join a diversity-destroying defendant(s), courts are required to "scrutinize [the] amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). Specifically, the court must balance the defendant's interest in maintaining a federal forum, with the competing interest of avoiding parallel lawsuits by considering the following "*Hensgens* factors,"

> [1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether the plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment would be permitted. If it permits the amendment of the non-diverse defendant, it must remand to the state court. If the amendment is not allowed, the federal court maintains jurisdiction.

*Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 367-368 (5th Cir. 2010) (citation omitted).

One issue that often is considered within the *Hensgens* rubric is whether plaintiff has a reasonable possibility of recovery against the non-diverse defendant(s). For example, a plaintiff will not be "significantly injured" under *Hensgens* by a court's denial of leave to add a clearly

9

meritless claim. *Wilson*, 602 F.3d at 368. Thus, the Fifth Circuit has held that it lies within a district court's "discretion" to deny a proposed amendment as futile, if there is no reasonable basis to predict that plaintiff will be able to recover against the would-be, non-diverse defendant. *Id.*[4]

The Barmores did not address the *Hensgens* factors in their motion for leave to amend. On the other hand, neither did SIG. In fact, SIG did not even file a response to the motion for leave to amend.[5] Therefore, the motion may be granted as unopposed. However, in its improper joinder argument directed at the FPD, SIG asserted that the Barmores' original petition failed to set forth a negligence claim, and, even if it did, the exclusivity provision of the LWCL precluded the Barmores from prosecuting a tort claim against Barmore's employer. Although the court did not reach those issues in assessing the Barmores' claims against the FPD, *see* discussion, *supra*, it may construe these arguments as a challenge to the viability of the Barmores' claims against the prospective party, Farmerville.

a) Colorable Claim

When a case is removed to federal court on the basis of diversity jurisdiction, the Erie doctrine requires federal courts to apply state substantive law when adjudicating state law claims.

---

[4] Nevertheless, an earlier Fifth Circuit panel made it clear that "[a] request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction (*i.e.,* a request fraudulently to join a party) would *never* be granted." *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 678 (5th Cir.1999) (emphasis added). In other words, the party opposing joinder has the opportunity to prevent joinder by demonstrating that plaintiff has no "colorable claim" against the proposed defendant. *Id*. This presents a potentially dispositive threshold issue, for if plaintiffs fail to state a colorable claim, then the court cannot permit amendment. *Cobb, supra*.

[5] While the FPD also did not file a response, the SASC voluntarily dismisses the FPD.

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Louisiana law, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." LA. CIV. CODE ART. 2315. "Fault is a breach of duty owed by one party to another under the particular facts and circumstances of a given case." *Broussard v. Northcott Expl. Co., Inc.*, 481 So.2d 125, 128 (La. 1986). Fault encompasses any conduct that falls below the standard of care that would be exercised by a reasonable person. *See Landry v. Bellanger*, 851 So.2d 943, 949 (La. 2003) and *Esco v. Smith*, 468 So.2d 1169, 1174 (La. 1985). "An employer has a duty to exercise reasonable care for the safety of his employees and to not expose them to unreasonable risks of injury or harm." *Carr v. Sanderson Farm, Inc.*, 189 So.3d 450, 456 (La. App. 1st Cir. 2016) (citing, *inter alia*, LA. R.S. § 23:13).

Furthermore, "liability for damages caused by defective things in one's custody or *garde* is governed by articles 2317 and 2317.1 of the Louisiana Civil Code." *Douglas v. CLK Multifamily Mgmt.*, No. 22-30713, 2023 WL 2624724, at *1 (5th Cir. Mar. 24, 2023) (citing *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 616 (5th Cir. 2018)). To recover damages sustained by a defective thing, a plaintiff must show: "[1] that the thing was in the defendant's custody, [2] that the thing contained a defect which presented an unreasonable risk of harm to others, [3] that this defective condition caused damage and [4] that the defendant knew or should have known of the defect." *Id*. (quoted source omitted). Moreover, "[a]n owner who transfers to another possession of his thing containing a structural defect continues to have the *garde* or custody of its structure and a duty to protect others from harm caused by the defect." *Ross v. La Coste de Monterville*, 502 So.2d 1026, 1029 (La. 1987), *superseded by statute*, LA. CIV. CODE ART. 2317.1 (Act No. 1–3, 1–3 WEST LA. SESS. LAW SERV. NO. 1 (1996)).

Here, the Barmores allege, among other things, that Farmerville provided Scott with a defective firearm that was prone to unintentional discharges, that it knew or should have known about, but nonetheless failed to warn or redress. *See* SASC, ¶¶ 10-12, 16-17, 38-39. These facts suffice to state a plausible negligence claim against Farmerville

Of course, SIG has maintained all along that, as Scott's employer, Farmerville (formerly sued as the FPD) enjoys immunity from suit in tort. The LWCL provides that, "[e]xcept for intentional acts . . . the rights and remedies herein granted to an employee or his dependent on account of an injury . . . for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages . . ." LA. R. S. § 23:1032(A)(1)(a); *see also* LA. R.S. § 23:1034 (public employees). In other words, when an employee is injured by an accident that occurs in the course of the employment and arises out of the employment, then compensation benefits are the employee's exclusive remedy against his employer for such an injury. *Mundy v. Dep't of Health & Human Res.*, 593 So.2d 346, 349 (La. 1992); *see also Duncan v. Wal-Mart Louisiana, L.L.C.*, 863 F.3d 406, 408 n.1 (5th Cir. 2017) (LWCL's exclusivity provision usually bars employee's suit for negligence against his employer). "When the employer seeks to avail itself of tort immunity under Section 1032, the employer has the burden of proving entitlement to immunity." *Mundy, supra*; *Endurance Am. Ins. Co. v. Cheyenne Partners, LLC*, Civ. Action No. 20-0571, 2023 WL 2334095, at *1 (W.D. La. Mar. 2, 2023) (same).[6]

---

[6] An employer's immunity from suit in tort pursuant to the exclusive remedy provision of Louisiana Revised Statute 23:1032 is an affirmative defense. *Brown v. Adair*, 846 So.2d 687, 690 (La. 2003) (citation omitted).

"[C]ompensation benefits are only available if an injury results from an accident which arises out of the employment and occurs in the course of the employment. Only in such instances are workers' compensation benefits the employee's exclusive remedy against his employer." *O'Regan v. Preferred Enterprises, Inc.*, 758 So.2d 124, 131–32 (La. 2000) (internal citation omitted). Further, "[a]n accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer's premises or at other places where employment activities take the employee." *Mundy,* 593 So.2d at 349. Also, "[a]n accident arises out of employment if the employee was engaged about his employer's business and when the conditions of obligations of the employment cause the employee in the course of employment to be at the place of the accident at the time the accident occurred." *McLin v. Indus. Specialty Contractors, Inc.*, 851 So.2d 1135, 1142 (La. 2003) (citation omitted).

SIG relies on several cases in its memoranda. For example, SIG cites *City of Shreveport v. Kingwood Forest Apartments*, for the proposition that "an off-duty police officer who is injured while performing any law enforcement action within this state is entitled to compensation . . ." *City of Shreveport v. Kingwood Forest Apartments*, 746 So.2d 234, 239 (La. App. 2nd Cir. 1999). However, SIG took the quoted language out of context. The excerpt was the court's recitation of defendant's argument premised on Louisiana Revised Statute § 23:1034.1, which extends workers' compensation benefits to officers who are injured while performing any law enforcement action, while on or off duty, *and outside [their] jurisdiction*. *Id*. Here, there is no evidence that the shooting range where Scott was injured was outside his jurisdiction. Moreover, in the *Kingwood Forest Apartments* case, the City of Shreveport already had paid

13

worker's compensation and death benefits to the off-duty officer's survivors. Thus, applicability of the LWCL to the city employer was not even at issue.

SIG also cited a Louisiana Second Circuit Court of Appeal case which held that a police officer was in the course and scope of his employment when he was in a car accident while driving to attend a college class, even though the class was not required by his employer and he was not being paid to attend it. *Wilson v. City of Shreveport*, 682 So.2d 882, 885 (La. App. 2nd Cir. 1996). The court reasoned that the class was related to his employment and, thus, benefited his employer. *Id*. Moreover, his employer was to reimburse the plaintiff for the educational expense, and he was in an employer-assigned vehicle, which he was required to use because of his 24-hour on-call status. *Id*.

In *McLin v. Industrial Specialty Contractors, Inc.*, the Louisiana Supreme Court held that an electrician was in the course and scope of his employment when he was in a car accident on his way home from an afterhours, unpaid safety meeting that his employer required him to attend. *McLin*, 851 So.2d at 1142. The court emphasized that the safety meeting was mandatory and directly benefitted the worker's employer. *Id*.

The undersigned agrees that the facts in *Wilson* and *McLin* are similar to those at issue here, but there are differences. For instance, in *Wilson*, the officer was on-call 24-hours per day. *Wilson, supra*. Moreover, in *McLin*, the plaintiff's employer required him to attend the safety meeting. *McLin, supra*. Here, there is no indication that Scott was on-call 24-hours per day or that Farmerville required him to attend the POST requalification training. Because Scott worked only part-time, his requalification could have been to preserve his marketability to other law enforcement agencies/employers.

14

Finally, and importantly, Farmerville's own insurer, the Louisiana Workers Compensation Corporation denied coverage because it concluded that Scott's injury was not compensable under the LWCL. *See* doc. # 23-1. While the denial of coverage by Farmerville's insurer is not dispositive, it provides support for the Barmores' contention that they have a colorable tort claim against Farmerville. The mere "possibility of qualifying under the Act does not itself bar one's rights and remedies under the general law." *O'Regan*, 758 So.2d at 137 (citation omitted). Indeed, "[i]f . . . the employee pursues a compensation claim but that claim is denied on the grounds that the injury is not compensable under the Act, then the claimant may maintain an action in tort." *Id.*, at 139.

Here, Farmerville's workers' compensation carrier has denied coverage to Scott. At this stage of the proceedings, the court cannot conclude that SIG has demonstrated that the Barmores do not enjoy a colorable claim for relief against Farmerville.

b)     *Hensgens* Considerations

Turning to the *Hensgens* factors, the undersigned observes that district courts have mulled various considerations to determine whether the purpose of a given amendment is to defeat federal jurisdiction. For example, some courts will ask "whether the plaintiffs knew or should have known the identity of the non-diverse defendant when the state court complaint was filed." *Schindler v. Charles Schwab & Co., Inc.*, No. 05-0082, 2005 WL 1155862 (E.D. La. May 12, 2005); *see also Penny Realty Inc. v. Sw. Capital Servs., Inc.*, No. 08-0473, 2008 WL 2169437, at *2 (W.D. La. May 23, 2008). Alternatively, other cases have recognized that "as long as the plaintiff states a valid claim against the new defendants, the principal purpose of the amendment is not to destroy diversity jurisdiction." *Herzog v. Johns Manville Prods. Corp.*, No. 02-1110, 2002 WL 31556352, at *2 (E.D. La. Nov. 15, 2002); *see also Tillman v. CSX*

*Transp. Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991) (upholding a finding that where the plaintiff had a valid cause of action against a defendant, the principal purpose of the amendment was not to defeat federal jurisdiction).

In 2018, this court adopted the latter approach, i.e., so long as a plaintiff states a valid cause of action against the non-diverse defendant, then the principal purpose of the amendment is not to destroy diversity jurisdiction. *Diamond McCattle Co. LLC v. Range Louisiana Operating LLC*, Civ. Action No. 18-0229, 2018 WL 6728587 (W.D. La. Dec. 21, 2018) (Doughty, J.). As discussed above, the Barmores enjoy a viable cause of action against Farmerville. Therefore, the principal purpose of the amendment is not to defeat diversity. *Diamond McCattle Co. LLC, supra.*

As to the timeliness of the proposed amendment, the Barmores initially sued the FPD, but then filed the instant motion to substitute Farmerville for the improperly sued FPD within the extended deadline for the Barmores to respond to the FPD's motion to dismiss wherein it first asserted its lack of capacity to be sued. Accordingly, the court is unable to conclude that the Barmores were dilatory in seeking amendment. *See Diamond McCattle Co., LLC* (plaintiff not dilatory where she sought amendment after defendant filed a motion for summary judgment and where she allowed three-months to lapse before propounding discovery to uncover the names of defendant's employees).

As to whether the Barmores will suffer significant injury if amendment is not allowed, the court observes that, in its answer, SIG alleged that any defect in the gun was the fault of others, and/or the accident was caused by the negligence of third-parties. *See* Answer [doc. # 8]. Here, of course, the Barmores contend that Farmerville was negligent. Consideration of

16

cost, judicial efficiency and potentially inconsistent results weigh in favor of not requiring the Barmores to prosecute separate suits in two forums where, as here, both arise under the same set of facts. *Roussell v. PBF Consultants, LLC*, Civ. Action No. 18-899, 2020 WL 5901118, at *11 (M.D. La. Sept. 18, 2020), *R&R adopted,* 2020 WL 5900135 (M.D. La. Oct. 5, 2020) (citations omitted). Moreover, because the fault of both SIG and Farmerville will have to be quantified, even if they were sued separately, this allocation of fault should be performed in a single case by the same trier of fact.[7] Accordingly, the third factor, like the others, weighs in favor of remand.

Finally, aside from SIG's federally recognized interest and strong preference to litigate this matter in federal court, the court does not discern any other considerations "bearing on the equities" that are not already subsumed within the specific *Hengens* considerations. The court remains acutely cognizant of a defendant's interest in retaining its chosen federal forum. However, plaintiffs enjoy a countervailing interest in reclaiming their preferred forum.[8]

In sum, upon application of the *Hensgens* considerations, the court finds they weigh in favor of allowing the proposed amendment.

---

[7] In *Roussell v. PBF Consultants, LLC*, the court emphasized that if plaintiff were forced to sue the prospective, non-diverse defendant in a separate suit then, "not only would that suit likely be prescribed under Louisiana's one-year prescriptive period for personal injury actions, but a separate suit (if allowed to proceed) risk[ed] the possibility of inconsistent judgments regarding the percentages of fault attributable to [all defendants]." *Roussell*, 2020 WL 5901118, at *11 (quoted source omitted).

[8] As Judge Rubin once remarked, "[f]orum-shopping is sanctioned by our judicial system. It is as American as the Constitution, peremptory challenges to jurors, and our dual system of state and federal courts." *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir. 1983). "The existence of these choices not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause." *Id.*

### III. Remand

The joinder (or substitution) of a non-diverse defendant destroys the court's subject matter jurisdiction. *Cobb*, 186 F.3d at 677. Once joinder of a diversity-destroying defendant is permitted, remand to state court is not merely discretionary, it is mandatory. 28 U.S.C. § 1447(e); *Hensgens*, 833 F.2d at 1182 (if amendment is permitted, the court must remand the whole case to state court)

### Conclusion

For the above-assigned reasons,

IT IS ORDERED that Plaintiffs Scott Barmore and Janice Barmore's motion for leave to file a second amended and supplemental complaint [doc. # 30] is GRANTED.[9] Furthermore,

IT IS RECOMMENDED that Defendant, Farmerville Police Department's motion to dismiss for lack of subject matter jurisdiction, insufficient service of process, and/or for failure to state a claim upon which relief can be granted [doc. # 20] be DENIED, as moot.

IT IS FURTHER RECOMMENDED that Plaintiffs Scott Barmore and Janice Barmore's motion to remand for lack of subject matter jurisdiction [doc. # 13] be GRANTED, and that the above-captioned cause be remanded to the Third Judicial District Court for the Parish of Union, State of Louisiana. 28 U.S.C. § 1447(e).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties

---

[9] As this motion is not excepted within 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 4th day of June, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE